DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimsliaw@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333- 7777
Facsimile: (949) 333-7778
Attorneys for Debtor,
BRIDGE DIAGNOSTICS, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In re | Case No: 8-24-bk-10803-TA |
|---|---|
| BRIDGE DIAGNOSTICS, LLC, | Chapter 11 Subchapter V |
| Debtor. | APPLICATION BY DEBTOR TO EMPLOY CROWN MEDICAL COLLECTIONS, LLC AS SPECIAL COUNSEL;  DECLARATION OF RICHARD HERSPERGER IN SUPPORT |
| | [NO HEARING IS REQUIRED AS SET FORTH IN RULE 9013-1(o) OF THE LOCAL BANKRUPTCY RULES] |

TO THE HONORABLE THEODOR ALBERT UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Debtor, BRIDGE DIAGNOSTICS, LLC ("Debtor"), in the above-captioned case, respectfully submits this application ("Application") for entry of an order authorizing the employment of Crown Medical Collections, LLC ("Crown"), as Special Counsel for the bankruptcy estate ("Estate"), related to the collection of outstanding Covid-19 testing claims, pursuant to 11 U.S.C. §§ 327, 328, and 331. In support of this Application, the Debtor represents as follows:

**A.    Debtor's Background and Retention of Special Counsel**

The Debtor is a clinical diagnostics laboratory that was founded in April 2020. Originally, the

1

Debtor launched its business to provide infectious disease testing focused on women's health and urology markets. During the COVID-19 pandemic, the Debtor shifted its focus onto the SARS-COV-2 test in response to the significant demand for it. While the Debtor's business generated millions of dollars in COVID testing income from 2020 through 2022, there is still several million dollars in expected revenue outstanding.

Since the demand for COVID diagnostic testing has decreased, the Debtor somewhat successfully navigated the change from a COVID diagnostic testing center to a Women's Health and Urology diagnostic testing center, however, the financial strain on the Debtor has continued. Specifically, the Debtor has $10-15 million in collectible outstanding accounts receivables ("AR") from COVID-related testing that was backed by the CARES Act. Post- pandemic, many of the health insurance companies simply stopped paying the COVID-related AR to diagnostic testing centers nationwide. The lack of consistent collection on the COVID-AR has put a severe strain on the Debtor's finances.

On October 17, 2023, pre-petition, the Debtor retained Crown Medical Collections, a healthcare accounts receivable collection firm, that focuses heavily on the collection of COVID-related AR in accordance with federal law, including:

(a) Sections 6001-6005 of the Families First Coronavirus Response Act, which requires group health plans, health insurers offering group or individual health insurance coverage, Medicare, Medicare Advantage, and Medicaid Plans to provide benefits for certain items and services related to the detection of SARS-CoV-2 or the diagnosis of Covid-19, when those items or services are furnished on or after March 18, 2020. During the applicable emergency period, plans and issuers were mandated to provide this coverage without imposing any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorizations, or other medical management requirements. FFCRA, Publ.L. 116-127; and

(b) Section 3202(a) of the Coronavirus Aid, Relief, and Economic Security Act which requires plans and issuers providing coverage for Covid-19 diagnostic testing and related services to reimburse a provider that does not have a negotiated rate, at the cash price for such service that is listed by the provider on a public website. CARES Act, Pub.L. 116-136.

In the limited time since its retention, pre-petition Crown has collected over $321,171.00 on behalf of the Debtor. Crown understands that any post-petition compromise or settlement would have to be approved by this Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Crown has engaged three hundred health insurance payers and is currently in active negotiations with dozens of health insurance payers on behalf of the Debtors as a result of their prior engagement. The Debtor seeks authority, through this application, to retain Crown as of the Petition Date as special counsel in these proceedings, pursuant to the terms of the Fee Agreement, which provides for Crown to receive a contingent fee in the amount of thirty (30%) of the net recovery of any amounts recovered by Crown for the benefit of the Debtor. Further detail regarding the terms of the engagement and compensation are contained in the Fee Agreement attached as **Exhibit A.**

**B.    Requirements for Application to Employ Professional**

Pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Rule 2014-1 of the Local Bankruptcy Rules ("LBR"), there follows a summary of the proposed employment of Crown. Should the Office of the United States Trustee, the Court, or any party in interest request additional information, Crown will provide a supplemental declaration prior to any hearing on this Application.

**1.    Employment and Compensation.**

Pursuant to LBR 2014-1(b)(1)(A), "[a]n application seeking approval of employment of a professional person pursuant to 11 U.S.C. §§ 327, 328, 1103(a), or 1114 must comply with the requirements of FRBP 2014 and 6003(a) and be filed with the court. The application must specify unambiguously whether the professional seeks compensation pursuant to 11 U.S.C. § 328 or 11 U.S.C. §330."

The Debtor seeks employment of Crown pursuant to 11 U.S.C. § 327. Crown will seek compensation pursuant to 11 U.S.C. §§ 328 and 331.

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure provides as follows:

> An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the case is a chapter 9 municipality case, a copy of the application shall

3

be transmitted by the applicant to the United States Trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the Debtors, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

In addition to the provisions of Rule 2014 of the FRBP, LBR 2014-1(b)(3)(A) provides that the Notice of Application must "[s]tate the identity of the professional and the purpose and scope for which it is being employed".

### 2.      Facts Showing the Necessity for the Employment/Services to be Rendered

Crown may be required to assist the Debtor in the following matters:

(a) Contacting and negotiating with third-parties health insurance payers, to collect outstanding AR for COVID-19 testing on behalf of the Debtor;
(b) Conducting discovery related to the outstanding AR for COVID-19 testing on behalf of the Debtor pursuant to FRCP 2004;
(c) Advising/counseling the Debtor of its rights related to collection of the outstanding AR for COVID-19 testing balances; and
(d) Performing all other services for and on behalf of Debtor that may be necessary or appropriate in the collection of the outstanding AR COVID-19 balances.

### 3.      Name of Entity to be Employed

The Debtor seeks to employ Crown Medical Collections Inc.  Pursuant to Rule 2014(b) of the Federal Rules of Bankruptcy Procedure, members, attorneys, and employees of Crown will act as representatives of the Debtor in connection with the collection of outstanding AR balances for COVID-19 testing.

### 4.      Reasons for the Selection

The Debtor believes that Crown is well-qualified to render the requested professional services to the Estate. Crown comprises business professionals and attorneys who have extensive

experience in the collection of outstanding AR for medical claims, specifically with regard to COVID-19 testing.  Crown currently has approximately twenty-five (25) claims with outstanding AR estimated at $500 million dollars that it is collecting for laboratory clients.

Crown and each of the professionals, attorneys, paralegals, and employees who will work on this case are familiar with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.

### 5.      Proposed Arrangement Compensation.

In addition to the provisions of Rule 2014 of the Federal Rules of Bankruptcy Procedure, LBR 2014-1(b)(3)(C) provides that the Notice of the Application must "[describe the arrangements for compensation, including the hourly rate of each professional to render services, source of the fees, the source and amount of any retainer, the date on which it was paid, and any provision regarding replenishment thereof.]"

Crown will render professional services to the Debtor on a contingent basis in accordance with the Fee Agreement attached as **Exhibit A**, which provides for a contingent fee of 30% of the total amount recovered. Crown has not received any pre or post-petition retainer for this matter.

Crown will be compensated from the funds recovered by the Estate for the outstanding COVID-19 testing claims.  Crown understands that its compensation in this case is subject to approval by the Bankruptcy Court. In compliance with 11 U.S.C. §§ 328 and 331, Crown intends to file interim and final applications for allowance of fees and reimbursement of costs as and when appropriate.

Crown has advised the Debtor that Crown has not shared or agreed to share any compensation to be received by it in this case with any other person, except as among members and employees of Crown.

### 6.      Crown's Connections and Associations.

Except as disclosed herein and to the best of Crown's knowledge, neither Crown, nor any of the attorneys or paraprofessionals comprising or employed by it, has any connection with Debtors or Debtor's attorneys or accountants, Debtor's creditors, or any other party in interest, or their respective attorneys or accountants. Based on the foregoing, the Debtor believes that Crown is a "disinterested person" within the meaning of Bankruptcy Code § 101(14).

Crown does not have an interest adverse to the Debtor or the bankruptcy Estate. As of the Petition Date.

To the best of the Crown's knowledge, and as set forth in the attached Declaration, none of the members, attorneys, or employees of Crown has any connection with any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or any person currently employed in the Office of the United States Trustee.

### 7.    Disinterestedness of Crown

Pursuant to LBR 2014-1 (b)(l)(B), "[t]he application must be accompanied by a declaration of the person to be employed establishing disinterestedness or disclosing the nature of any interest held by such person." The Declaration submitted with this Application provides information of Crown's disinterestedness.

### C.    Service on Office of the United States Trustee

Pursuant to LBR 2014-1(b)(1)(C), "The United States Trustee must be served, in accordance with LBR 2002-2(a), with a copy of the application and supporting declaration not later than the day it is filed with the court. No hearing is required unless requested by the United States trustee or a party in interest, or as otherwise ordered by the court." As set forth in the sworn Proof of Service filed contemporaneously with this document, the Debtor served a copy of this Application on the Office of the United States Trustee on the date this Application was filed with the Court.

Crown has indicated in its Declaration that it has no connections with the Debtor (other than its prepetition representation as outlined above), creditors of the Debtor, or any other party in interest, including their respective accountants, the United States Trustee, or any other person employed by the Office of the United States Trustee, other than it has sought recovery on behalf of its clients from various insurance carriers in the past and concurrently in other representations, and will be seeking, or has sought, recovery from those same insurance carriers for Debtor.  Applicant has conducted a search of its client files to make this determination.

/ / /

/ / /

6

## E.      Conclusion

WHEREFORE, the Debtor requests that it be authorized to employ Crown, effective as of the date of filing of the Bankruptcy Petition as its Special Counsel in accordance with the Fee Agreement attached to the Application as **Exhibit A**, pursuant to 11 U.S.C. § 327, with any compensation or reimbursement of costs to be paid by the Estate only upon application to and approval by the Court pursuant to 11 U.S.C. §§ 328 and 331.

Dated: May 15, 2024

Respectfully submitted:

/s/*David A. Wood*
DAVID A. WOOD, #272406
dwood@marshackhays.com
MATTHEW W. GRIMSHAW, #210424
mgrimsliaw@marshackhays.com
MARSHACK HAYS WOOD LLP
Attorneys for Debtor,
BRIDGE DIAGNOSTICS, LLC,

## DECLARATION OF RICHARD HERSPERGER

I, Richard Hersperger declare as follows:

The undersigned is an individual over 18 years of age and competent to make this Declaration.

1.      The undersigned is a representative of Crown Medical Collections, LLC ("Crown") with offices located at 110 W. High Street, Ebensburg, Pennsylvania 15931.

2.      The undersigned makes this Declaration in support of the Application of Debtor to Employ Crown Medical Collections as Special Counsel ("Application") filed by Debtor, Bridge Diagnostics, LLC ("Debtor"), Case No. 8:24-bk-10803-TA.

3.      If called as a witness, the undersigned could and would competently testify to the following of his own personal knowledge.

4.      The undersigned has reviewed the court's PACER docket and the files contained therein for this case.

5.      The Debtor has asked that Crown serve as Special Counsel in connection with the collection of outstanding AR for COVID-19 diagnostic testing.

6.      Crown is well-qualified to serve as special counsel as its expertise lies in collecting outstanding AR for COVID-19 diagnostic testing and Crown has extensive experience doing so.

7.      Crown comprises members, attorneys, paralegals, and other employees who have extensive experience in the collection of outstanding payment for COVID-19 testing.

8.      Crown employs several attorneys who are duly admitted to practice law in the courts across the United States, at least one of which is in the process of completing the pro-hac vice process for the United States District Court for the Central District of California.

9.      Crown's compensation for services rendered will be on a contingent basis at a rate of 30% of the total funds collected, in accordance with the Fee Agreement attached to the Application as **Exhibit A.**

10.     Crown has not received a retainer for the services that it will perform in this matter.

11.     Crown understands that its compensation in this case is subject to approval of this Court pursuant to 11 U.S.C. §§ 328, and 331.

8

12. Crown's business is limited to the collection of outstanding funds from health insurance payers on behalf of its clients.

13. Crown maintains a database of all of the cases for which it has been employed.  Prior to entering into a Fee Agreement with the Debtor, Crown completed a conflicts check. As a result of the conflicts check, no relationship was identified that would prevent Crown's employment in this matter.

14.  Applicant has the experience and ability to represent the above-captioned Debtor for the purposes described in the accompanying Petition to Appoint Crown Medical Collections, LLC as Special Counsel for the Debtor-in-Possession and is willing to accept employment on the basis set forth herein.

15. Applicant does not hold any interest adverse to the estate, and Applicant, as well as its members, are disinterested persons, as defined in 11 U.S.C. § 101(14)[1].

16. Pursuant to F.R.Bankr.P. 2014, Applicant has no connection  with the Debtor (other than its prepetition representation), creditors of the Debtor, or any other party in interest, including their respective accountants, the United States Trustee, or any other person employed by the Office of the United States Trustee, other than it has sought recovery on behalf of its clients from various insurance carriers in the past and concurrently in other representations, and will be seeking, or has sought, recovery from those same insurance carriers for Debtor.  Applicant has conducted a search of its client files to make this determination.

After reviewing the investigation described above, I declare under penalty of perjury that the foregoing is true and correct.

---

[1] "Disinterested person" means person that ----
   (A) is not a creditor, an equity security holder, or an insider;
   (B) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and (E) does not have an interest materially adverse to the interest of the estate or of an class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason"

9

CROWN MEDICAL COLLECTIONS, LLC

_Richard G. Karapinsky_

Chief Executive Officer
Crown Medical Collections, LLC
110 W. High Street
Ebensburg, PA 15931

Date:   May 24, 2024

# **EXHIBIT A**

# COLLECTION AGENCY CONTINGENCY FEE AGREEMENT

This Collection Agency Agreement (this "Agreement") is made as of October 18, 2023 (the "Effective Date"), by and between Bridge Diagnostics, with its principal office at 111 Theory, STE 100, Irvine CA 92617, (hereinafter referred to as "Client") and Crown Medical Collections, LLC, with its principal office at 100 W High Street, Ebensburg, PA 15931, (hereinafter referred to as "Agency"). Client and Agency are collectively referred to herein as "Parties," and individually as a "Party," as required by context.

WHEREAS, Client requires, from time to time, collection services on certain delinquent accounts, and

WHEREAS, Agency is engaged in the business of performing collection services for third parties, specifically with a specialty in claims for Covid-19 diagnostic testing, and

WHEREAS, Client wishes to retain Agency for the purpose of collecting debts owed to Client by an obligor, i.e. the individual or entity legally liable to Client for payment of the balance on an account, and Agency agrees to be so engaged in accordance with the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the mutual promises, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**1. REFERRAL OF ACCOUNTS FOR COLLECTION.** From time to time and in its sole discretion, Client shall refer legally due and owing unpaid credit accounts ("Referred Accounts") to Agency for collection of the outstanding balance due and Agency agrees to provide the collection services described in this Agreement on such Referred Accounts (the "Services"). Unless otherwise agreed to by the Parties in writing, those Referred Accounts placed by Client with Agency and the Services performed by Agency shall be governed by the terms and conditions of this Agreement. For the avoidance of doubt, nothing herein, including any referral of Referred Accounts, constitutes an assignment of an Referral Accounts, which shall remain the right and property of Client.

**2. RIGHTS AND DUTIES OF CLIENT.**

A. Account Information. Upon referral of an Referred Account to Agency for collection, Client will provide Agency with the following information relative to each Referred Account: the applicable creditor name and the required obligor information, including the obligor's name, address, phone number(s) and place of employment; the Referred Account number and balance owing; pertinent account history, claims numbers and, account memos and documentation ("Account Information"). Thereafter, Client shall provide, in a timely manner, all reasonably necessary assistance, information, and documents that Agency may need to respond to obligor validation requests or discovery inquiries relating to a Referred Account. Client further agrees to provide Agency with information concerning all direct payments, adjustments, and disputes on a Referred Account within a timely manner, not to exceed thirty (30) days.

B. Bankrupt Referred Account. Client shall promptly notify Agency if it receives notification, whether oral or written, of a bankruptcy of an obligor on a Referred Account.

C. Recall of Accounts. Notwithstanding Client's recall of any Referred Account, Agency shall retain the right to receive a Contingent Fee on any payment, settlement, insurance account or judgment earned on a recalled Referred Account (a "Withdrawn Account") to which it would otherwise be entitled, unless other arrangements are made with Client. This section is not a provision for cancelling this Agreement. In addition, if Agency cancels a Referred Account and returns it to Client, Client shall not resubmit such account to Agency without prior written notice.

**3. RIGHTS AND DUTIES OF AGENCY.**

A. Legal Compliance. Agency shall comply with and abide by all federal, state and local laws and regulations regarding collection agencies and/or governing the collection of debt and consumer credit reporting in the performance of the Services, including, but not limited to (i) the Fair Debt Collection

4892-2553-9464v.1 0115624-000001

EXHIBIT A, PAGE 11

Practices Act ("FDCPA") (16 USC 1601 et seq.); (ii) the Fair Credit Reporting Act ("FCRA") (15 USC 1681 *et seq.*); (iii) the FACT Act; (iv) the Equal Credit Opportunity Act (16 USC 1691 *et seq.*); (v) the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* administered by the Federal Communication Commission; (vi) the Telephone Sales Rule, 16 C.F.R. § 310.1 *et seq.*; (vii) Electronic Funds Transfer Act, 12 USC § 226 et. seq.; (viii) any rules promulgated by the Consumer Financial Protection Bureau ("CFPB") or any other federal entity and required by Client; and (ix) any comparable state or local versions of the foregoing (collectively, the "Collection Laws").

B. Monitoring and Self Correction. Because Collection Laws contain subjective legal standards that prohibit conduct that rises to the level of deceit or harassment, Agency agrees to monitor its Agents, employees and vendors to ensure that their conduct is at all times lawful, honest, courteous and business-like. Whenever Agency self-identifies and/or whenever Client identifies any issues relating to collection laws, Agency will advise Client and shall immediately correct the conduct or condition that is causing the Agency not to be in compliance with Collection Laws, whether such noncompliance is attributable to a process, procedure or the conduct of an individual Agent or employee of the Agency.

C. No Delegation. Agency shall not assign or delegate any portion of the performance of the Services under this Agreement to any third party over which Agency does not have direct control and supervision without the express written consent of Client. Notwithstanding the foregoing, Agency may use its own employees or contractors retained by Agency to perform the collection services on Referred Accounts. Agency's Attorneys will handle the majority of collection activity.

E. Settlements. Client authorizes Agency to settle any Referred Accounts, within its reasonable discretion and in good faith to maximize recovery of the balance owing on the Referred Account, without written authorization by Client. Agency will have no authority to formally initiate any legal claims against any Referred Account debtor. Client will direct all Referred Account debtors to make payments via check, debit, credit, recurring ACH, money order, or cash to an account designated by Client. Agency will not accept any payment on any Referred Accounts to any other accounts, including any accounts in its own name.

F. Bankrupt Referred Account. Upon receipt of information that the obligor on a Referred Account has filed for bankruptcy or receivership, Agency shall immediately cease all efforts to collect on the Referred Account. Agency shall promptly transmit to Client all relevant information regarding the obligor's bankruptcy. If Agency receives written notice of the obligor's bankruptcy, Agency shall promptly transmit such notice to Client. If notice of a bankruptcy filing is provided verbally by the obligor or a third party, Agency shall attempt to obtain information regarding the jurisdiction in which the case has been filed and the case number assigned to the obligor.

G. Legal Services/Scope of Work. Attorney will evaluate and aggressively pursue Client's outstanding Covid-19 testing claims with each health insurance provider and government entity.

H. Federal Law Regarding Payment for Covid-19 Testing. Attorney will pursue Client's Covid-19 testing claims in accordance with the following Federal Laws, along with all other applicable laws:

(a) Pursuant to Sections 6001 – 6005 of Families First Coronavirus Response Act, group health plans, health insurers offering group or individual health insurance coverage, Medicare, Medicare Advantage, and Medicaid plans are required to provide benefits for certain items and services related to the detection of SARS-CoV-2 or the diagnosis of Covid-19, when those items or services are furnished on or after March 18, 2020, and during the applicable emergency period. Plans and issuers must provide this coverage without imposing any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorizations, or other medical management requirements. FFCRA, Pub. L. 116-127.

(b) Section 3202(a) of the Coronavirus Aid, Relief, and Economic Security Act requires plans and issuers providing coverage for COVID-19 diagnostic testing and related services to reimburse a provider that does not have a negotiated rate, at the cash price for such service that is listed by the provider on a public website. CARES Act, Pub. L. 116-136.

4892-2553-9464v.1 0115624-000001

EXHIBIT A, PAGE 12

**4. COMPENSATION.** As its sole compensation for performing the Services under this Agreement Agency shall earn and be paid a Contingent Fee (as defined and calculated herein) for any money collected on a Referred Account of Client.

A. Contingent Fee. For the purposes of this Agreement, the "Contingent Fee" shall be thirty percent (30%) of the gross amount of money collected by Agency on a Referred Account of Client, which Agency is authorized to calculate on the recovered proceeds and immediately invoice Client. Client shall remit payment of Contingent Fee via ACH within 7 business days of invoice date as long as recovered proceeds are deposited into Client's banking institution of choice prior to the invoice date. If recovered proceeds are deposited into Clients banking institution of choice after invoice date, Client shall remit payment of Contingent Fee within two business days of deposit date.

B. Direct Payments Made to Client. Agency shall be entitled to receive the Contingent Fee provided for in Section 4.A on all money received on a Referred Account. Client will use reasonable efforts to monitor any payments and/or settlements actually received directly from the obligor in connection with a Referred Account (a "Direct Payment"). Client shall notify the Agency on a regular basis of all Direct Payments, or if the Agency becomes aware of such payment, the Agency will notify Client. Client shall promptly pay to Agency via ACH or wire transfer to the Agency account the Contingent Fee due and payable on any Direct Payment. In the event Client fails to pay to Agency the Contingent Fee due and payable on any payments made directly to Client within seven (7) days of collection, Agency shall be entitled to calculate and invoice Client for said Contingent Fee. Client will provide Agency with a report of all Direct Payments on a monthly basis (a "Direct Payment Statement"), which shall indicate (i) the Referred Account numbers for which Client received a Direct Payment of money, (ii) the amounts received, (iii) the Contingent Fee due and payable, and (iv) the confirmation of payment of the Contingent fee to Agency. The Direct Payment Statement will be submitted to Agency pursuant to the provisions for notice in this Agreement.

C. Reporting of NSF Checks. Agency shall report to Client, in the next scheduled report, any check returned to Agency due to insufficient funds. In the event that Agency has tendered to Client an Invoice (as defined herein) for any portion of the Contingent Fee due to Agency in connection with any dishonored check, Agency' next monthly Invoice shall designate a corresponding reduction to reflect the obligor's failure to pay on the Referred Account.

D. Payments on Withdrawn Accounts. If a Referred Account is recalled and withdrawn by Client prior to completion of collection by Agency (pursuant to the terms herein), Agency shall be entitled to and shall be paid a Contingent Fee on any payments received by Agency or by Client within thirty (180) days following the date of the recall of the Referred Account.

**5. REPRESENTATIONS AND WARRANTIES OF CLIENT.** Client represents and warrants to Agency as follows:

A. All Referred Accounts placed with Agency hereunder are lawfully due and owing, that they are owned by the Client (or its affiliates and customers) and that the Referred Accounts are not subject to any claim of fraud or otherwise wholly or partially invalid due to payment or settlement by the obligor or any other claim or defense.

B. Information and data on the Referred Accounts is accurate to the best of Client's information and knowledge.

C. Client is not aware of any disputes regarding the Referred Accounts, including any bankruptcy filing or expiration of the applicable statute of limitations.

D. If at any point in time Client becomes aware that it will be necessary to file for bankruptcy, it will notify Agency in advance of filing for the same. In the event of Client filing for bankruptcy, any collections efforts are to be treated as an attorney charging lien. To the extent permitted by applicable bankruptcy laws and regulations, the Contingent Fee Agreement will be honored on any and all outstanding collections that may become the subject of funding for the bankruptcy. The Agency's Contingent Fee Agreement will be secured above any other creditor, insofar as it complies with the applicable bankruptcy law and regulations.

4892-2553-9464v.1 0115624-000001

EXHIBIT A, PAGE 13

**6. VERIFICATION OF DEBT.** Client acknowledges that in connection with the collection of delinquent consumer debts, the FDCPA requires Agency to provide an obligor with verification of the underlying obligation if that request is made to Agency in writing by an obligor within thirty (30) days of Agency's initial communication with the obligor. The law prohibits Agency from collecting on any obligation once a verification request is made to Agency from the obligor until such time as said verification has been mailed by Agency to the obligor. Client acknowledges that in any situation in which it does not provide Agency with the requested verification, Agency can no longer legally attempt to collect the Referred Account. In such case, Client acknowledges that the Agency will return the Referred Account to Client upon request.

**7. TERMINATION OF AGREEMENT.** This Agreement shall be effective upon execution by each of Client and Agency and will continue in effect until terminated as provided herein. This Agreement may be terminated with or without cause by either Agency or Client, upon giving the other Party thirty (30) days written notice prior to the stated date of termination. Termination shall not affect the collection of fees earned before termination date or on Referred Accounts in active negotiations with tentative agreements within one hundred and eighty (180) days. Should Client file for bankruptcy, and the amount of collectable gross revenue is a subject of the "assets" of the bankruptcy proceedings, Agency shall continue its efforts, with permission of the court, and maintains an attorney charging lien in order to protect the 30% Contingent Fee Agreement herein.

**8. RETURN OF ACCOUNTS AND REQUIRED INFORMATION.** Upon termination of this Agreement, with or without cause, Agency agrees to use its best efforts to cooperate with Client in such termination. Specifically, but not limited to, Agency shall return to Client all Referred Accounts, along with all Account Information and a current status report of all such Referred Accounts, within thirty (30) business days after the date of termination.

    A. Retained Rights. Termination of this Agreement by either Party will not affect the collection enforcement or validity of any accrued obligations owing between the Parties as to any Referred Account. Notwithstanding the foregoing, Agency shall retain the right to receive the Contingent Fee on paying accounts, settlements, insurance accounts or judgments, subject to the terms hereof.

**9. INDEMNIFICATION.**

    A. By Agency. Agency hereby agrees to indemnify, defend and to hold Client, its officers, directors, employees, agents, attorneys, subsidiaries, affiliated companies, parent companies, representatives, and successors and assigns, harmless from and against all claims, damages, costs, losses or liabilities, including, without limitation, reasonable attorneys' fees and expenses ("Losses") to the extent such Losses arise out of or are primarily related to (i) a breach by Agency of this Agreement including, but not limited to, Agency's failure to comply with all relevant Collection Laws, or (ii) any negligent or wrongful acts, errors, or omissions of Agency or its employees or agents in performing any obligation or duty it has under this Agreement; provided however, that Agency shall have no obligation to indemnify or hold Client harmless due to or arising out of an error in any information furnished by Client to Agency concerning a Referred Account.

    B. By Client. Client agrees to indemnify, defend and hold Agency, its officers, directors, employees, agents, attorneys, subsidiaries, affiliated companies, parent companies, representatives, and successors and assigns, harmless from and against all Losses to the extent such Losses arise out of or are primarily related to (i) the negligent or wrongful acts, errors, or omissions of Client or its employees, agents, affiliates, assigns, or the employees or agents of any of them, in connection with this Agreement, including but not limited to errors or omissions in connection with information furnished by Client to Agency concerning a Referred Account, or (ii) any collection effort by Client or any other collection agency as to a Referred Account.

    C. Notice. Client and Agency agree to notify the other party within three (3) business days of any claim, counterclaim, cross-claim, CFPB, FTC or other federal or state regulatory inquiry or complaint, or any other inquiry or complaint asserted against the other in connection with a Referred Account or group of Referred Accounts.

    D. Defense. Each Party will assume its own proper responsibility in connection with any claims made by a third party against Client and/or Agency. Agency is an independent contractor and is solely responsible for the employment, acts and omissions, control and direction of its employees and agents. If

4892-2553-9464v.1 0115624-000001

the acts of the employees or agents of Agency are the proximate cause of any action brought against Client, Agency will assume full responsibility for the defense of said action and payment of any resulting judgment, provided that it does so diligently and there is not a legal conflict of interest between Client's and Agency's position. If the acts of Client or employees etc. are the proximate cause of any action brought against Agency by third party, then Client will assume full responsibility for the defense of said action and payment of any judgment, provided that it does so diligently and there is not a legal conflict of interest between Client's and Agency's position. The Party providing indemnification has reasonable discretion in its choice of counsel and may direct the litigation at its reasonable discretion, absent any conflict of interest.  Nothing herein shall be deemed to expand the scope of indemnification obligations set forth in Section 9(A).

E. Survival. The Parties agree that these provisions shall apply even in the event one or both Parties deem the cause of action at issue to be frivolous or otherwise unsupported by law. The indemnification obligations provided for in this section shall survive the termination of this Agreement.

**10. LIMITATION OF LIABILITY.** Except to the extent caused by the negligence, breach of this Agreement, or willful misconduct of Agency, Agency shall not be liable for any lost profits, consequential, exemplary, incidental, indirect, or special damages even if advised by Client of the possibility of such damages. Except to the extent as specifically set forth in this Agreement, Client shall not be liable for any lost profits, consequential, exemplary, incidental, indirect, or special damages even if advised by Agency of the possibility of such damages. The provisions of this section shall survive termination of this Agreement or any Amendment hereto.

**11. CONFIDENTIALITY.** The Parties agree that any and all Confidential Information (as defined herein) shall be used solely for the purposes of the lawful performance of this Agreement and shall not be used or disclosed to any third party except as authorized herein or by the Parties in writing.

A. Definition. As used in this Agreement, "Confidential Information" shall include (i) all information regarding a Referred Account or the obligor, (ii) each Party's proprietary information, trade secrets or other business information that is either identified as or should otherwise be reasonably understood to be of a confidential nature, as may be disclosed to the other Party in connection with the performance of this Agreement, and (iii) this Agreement and the nature, terms and conditions of this Agreement. In addition, Agency understands that it will be exposed to certain valuable and confidential information that is the exclusive property of Client or its affiliated Clients, including Consumer Financial Information (as defined in Section 15, below) of obligors and related parties. Agency will be given access to this information solely for the purposes of effectively collecting the Referred Accounts. Agency shall not disclose to any third party any information disclosed by Client or acquired by Agency in the performance of services nor shall it permit any third party access to such information. Agency agrees to keep confidential all information herein and/or related to Client, its investors/clients, a debt owner and the Referred Account obligors. All such additional information is deemed Confidential Information under this Agreement and shall be used solely by Agency as necessary for the performance of Services under this Agreement.

B. Limited Use. Each Party agrees it shall not, without the prior written consent of the other Party or as permitted by the terms and conditions of this Agreement, do any of the following: (i) disclose any Confidential Information to any third party; (ii) permit any third party access to such Confidential Information; or (iii) use Confidential Information for any purpose other than collecting debt on the Referred Accounts referred to Agency by Client.

C. Exceptions. The confidentiality obligations imposed on the Parties by this section shall not apply to Confidential Information which, through no fault of a Party: (i) is required to be disclosed in order to comply with applicable laws and regulations, court orders or other process of law, (ii) is required to be made to any tax, banking or other regulatory authority, or legal or financial advisor of either Party, (iii) is made in connection with the sale or other transfer of any Account by a Party or its successors or assigns, (iv) is made to such Party's current or prospective lenders or investors, (v) was already known to that Party prior to disclosure of the same Confidential Information by the other Party or is independently discovered by the Party, (vi) subsequently becomes available to the public at large without a breach of this Agreement, or (vii) is supplied in the normal course of Agency's business under permissible use requirements.

4892-2553-9464v.1 0115624-000001

**12. ENTIRE AGREEMENT.** The Parties acknowledge and agree that this Agreement constitutes the entire Agreement between them and shall supersede all prior agreements, understandings, writings, proposals, representations and communications, oral or written, with respect to the subject matter hereof.

**13. FURTHER ASSURANCES.** Each party agrees to execute such other documents as may be necessary to implement or perform this Agreement.

**14. SEVERABILITY.** If any provision of this Agreement is construed to be invalid, illegal or unenforceable, for any reason, then the remaining provisions of this Agreement shall remain enforceable, unless such invalid, illegal or unenforceable provision is deemed an essential part of the "benefit of the bargain" between the parties. Additionally, any failure by Client to enforce Agency's strict performance of any provision of this Agreement will not constitute a waiver of its right to subsequently enforce such provision or any other provision of this Agreement.

**15. AMENDMENTS.** This Agreement cannot be modified or amended except with the written consent of both parties. Such modification shall be in the form of an amendment, letter of understanding or written addendum to the Agreement.

**16. GOVERNING LAW AND VENUE.** This Agreement and any dispute or controversy arising hereunder or otherwise between the Parties to this Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania, without reference to rules governing choice of law. The Parties agree that any legal proceeding of any nature brought by either Party against the other party to enforce any right or obligation under this Agreement, or arising out of any matter pertaining to this Agreement, shall be submitted for trial, without a jury, before the federal or state courts located in Pennsylvania. The Parties further agree that the federal and state courts located in Pennsylvania shall have exclusive jurisdiction and the Parties further agree to waive any dispute or defense regarding such jurisdiction, including any claims of *forum non-conveniens*.

IN WITNESS WHEREOF, the Parties, by their duly authorized representatives, have executed this Agreement in duplicate on the date above written.

CLIENT                                                  AGENCY

Bridge Diagnostics                                      Crown Medical Collections, LLC

_____                                 _____
Jason Hansen, Founder and CEO                           Richard Hersperger, Chief Executive Officer

4892-2553-9464v.1 0115624-000001

EXHIBIT A, PAGE 16

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **APPLICATION BY DEBTOR TO EMPLOY CROWN MEDICAL COLLECTIONS, LLC AS SPECIAL COUNSEL;  DECLARATION OF RICHARD HERSPERGER IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 3, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2**.  **SERVED BY UNITED STATES MAIL**: On **June 3, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
BRIDGE DIAGNOSTIC, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS
120 VANTIS DRIVE, SUITE 570
ALISO VIEJO, CA 92656-2618

**INTERESTED PARTY**
CROWN MEDICAL COLLECTIONS, LLC
ATTN: RICHARD HERSPERGER
110 W. HIGH STREET
EBENSBURG, PA 15931

☒ Service information continued on attached page

**3**.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 3, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**THE REQUIREMENT OF LBR 5005-2(d) TO PROVIDE JUDGES COPIES IS SUSPENDED AT THIS TIME**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 3, 2024 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                  **F 9013-3.1.PROOF.SERVICE**

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- **ATTORNEY FOR CREDITOR JASON HANSEN: Anthony Bisconti**   tbisconti@bklwlaw.com, 7657482420@filings.docketbird.com;docket@bklwlaw.com
- **ATTORNEY FOR CREDITOR DE LAGE LANDEN: Christopher Crowell**   ccrowell@hrhlaw.com
- **TRUSTEE: Robert Paul Goe (TR)**   bktrustee@goeforlaw.com, kwareh@goeforlaw.com;bkadmin@goeforlaw.com;C187@ecfcbis.com;kmurphy@goeforlaw.com;rgoe@goeforlaw.com
- **ATTORNEY FOR U.S. TRUSTEE: Queenie K Ng**   queenie.k.ng@usdoj.gov
- **INTERESTED PARTY: Jennifer Oliver**   jennifermarieoliver@gmail.com
- **INTERESTED PARTY: R Gibson Pagter**   gibson@ppilawyers.com, pagterandperryisaacson@jubileebk.net
- **U.S. TRUSTEE: United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR: David Wood**   dwood@marshackhays.com, dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;alinares@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.