**MYLES P. McALINEY, ESQ.**
Crown Medical Collections
100 West High Street
Ebensburg, PA 15931
Tel: (570) 237-5237
mpmcalineylaw@gmail.com

Special Counsel to Debtor,
Bridge Diagnostics, LLC
(Admitted Pro Hac Vice)

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA — SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No.: 8:24-bk-10803-SC |
| **BRIDGE DIAGNOSTICS, LLC,** | Chapter 11 |
| Reorganized Debtor. | Subchapter V Case [FRBP 1020] |

**NOTICE OF MOTION OF REORGANIZED DEBTOR, BY AND THROUGH SPECIAL COUNSEL CROWN MEDICAL COLLECTIONS, TO EXTEND DEADLINE TO COMMENCE AVOIDANCE ACTIONS UNDER 11 U.S.C. §§ 544, 545, 547, 548, AND 553**

Hearing Date:
Date:       May 6, 2026
Time:       1:30 p.m.
Location:   Courtroom 5C
            411 West Fourth Street
            Santa Ana, CA 92701

- 1 -

**PLEASE TAKE NOTICE** that on May 6, 2026 at 1:30 p.m. in Courtroom 5C of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, CA 92701, Reorganized Debtor Bridge Diagnostics ("Debtor"), will bring a Motion, by and through Special Counsel Crown Medical Collections, to Extend Deadline to Commence Avoidance Actions Under 11 U.S.C. §§ 544, 545, 547, 548, and 553 ("Motion"). In support of the Motion, the Debtor respectfully represents:

**SUMMARY OF ARGUMENT**

Under 11 U.S.C. § 546(a), an action or proceeding arising under 11 U.S.C. §§ 544, 545, 547, 548 and 553 may not be commenced after two years after the entry of the order for relief.

Bridge Diagnostics, LLC (the "Debtor") filed a voluntary petition under Subchapter V of Title 11 of the United States Code on March 29, 2024. The current deadline to file avoidance actions under 11 U.S.C. §§ 544, 545, 547, 548 or 553 is March 29, 2026 (the "Deadline").

Since confirmation of the Debtor's Chapter 11 Plan of Reorganization (the "Plan"), the Debtor and its court-approved professionals, including Crown Medical Collections ("CMC") as Special Counsel, have conducted a comprehensive, data-driven investigation into the Debtor's accounts receivable, payment histories, and creditor relationships. This investigation has already identified millions of dollars in potential underpayments, improper denials, and systemic adjudication irregularities across multiple national payers including at least one entity that has filed a proof of claim against this estate while the Debtor's own analysis indicates that same entity may owe substantial funds to the Debtor.

This Motion is necessary to preserve valuable estate causes of action that are actively being investigated but cannot yet be fully evaluated due to the extraordinary volume and complexity of the transactions at issue, the multilayered structure of the Debtor's receivables portfolio across commercial and government payers, and the refusal of certain major counterparties to engage in good-faith reconciliation efforts.

The Reorganized Debtor respectfully requests that the Court extend the Deadline for approximately six months, through and including September 25, 2026.

## I.  BACKGROUND

### A.  The Bankruptcy Filing, Plan Confirmation, and Deadline

On March 29, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under Subchapter V of Chapter 11 of Title 11 of the United States Code. The Debtor is a healthcare diagnostic testing company that operated COVID-19 diagnostic testing services, submitting claims to hundreds of commercial and government payers under applicable Medicare, Medicaid, and private insurance coverage programs.

On September 13, 2024, the Court confirmed the Plan. The Debtor continues to administer the estate and reconcile creditor claims in accordance with the confirmed Plan.

Under 11 U.S.C. § 546(a)(1)(A), the current deadline to commence avoidance actions under §§ 544, 545, 547, 548, and 553 is March 29, 2026.

## B.   The Debtor's Ongoing Investigation

The Debtor, together with CMC as Special Counsel, has conducted a comprehensive audit and reconciliation of accounts receivable, creditor claims, and payment histories spanning multiple years of operations and hundreds of thousands of individual claims. See Declaration of Richard Hersperger ("Hersperger Decl.") attached to the Motion, ¶5. This investigation has included detailed analysis of:

- Electronic claim submission data (ANSI X12 837 transactions);
- Payer remittance advice (ANSI X12 835 Electronic Remittance Advice transactions);
- Real-time claim status inquiry and response data (ANSI X12 276/277 transactions);
- Eligibility and benefits verification data (ANSI X12 270/271 transactions);
- Internal payment reconciliation and accounts receivable ledgers; and
- Payer-specific reimbursement histories and fee schedule applications.

The investigation has encompassed tens of thousands of claims submitted across multiple commercial, Medicare, and Medicaid payers, representing tens of millions of dollars in billed charges. Hersperger Decl., ¶6. Based on this analysis, CMC has identified millions of dollars in potential underpayments, improper denials, and other discrepancies requiring further investigation. Id., ¶8. The investigation has revealed multiple categories of issues, including: (i) systemic underpayment or denial of laboratory and diagnostic claims; (ii) application of reimbursement methodologies inconsistent with applicable fee schedules and payer contracts; (iii) blanket denial of claims without individualized adjudication; and (iv) claims that remain unpaid or unresolved. Id.

## C.   Specific Findings to Date

The Debtor's investigation to date has identified significant outstanding balances and discrepancies involving the following major payers, among others:

- Blue Cross Blue Shield (Illinois) – approximately 71,000 claims reviewed, with over $6.5 million identified as outstanding or underpaid;
- United Healthcare – approximately 32,000 claims reviewed, with over $2.5 million identified as outstanding or underpaid; and
- Aetna – approximately 26,000 claims reviewed, with over $2.2 million identified as outstanding or underpaid.

See Hersperger Decl., ¶10. In addition to the foregoing, the Debtor's investigation has identified material discrepancies across numerous other payers, including Medicare programs, national commercial carriers, and managed care organizations, many of which reflect similar

patterns of underpayment, denial, or inconsistent reimbursement methodology application. Id., ¶11.

Significantly, United Healthcare has filed a proof of claim in this case. Hersperger Decl., ¶12. The Debtor's ongoing analysis indicates that United Healthcare may in fact owe substantial sums to the Debtor arising from unpaid or underpaid claims creating a potential basis for setoff, recoupment, or affirmative recovery by the estate. Id. The Debtor cannot fully evaluate this relationship without completing its investigation and, if necessary, formal discovery. Id.

The Debtor's investigation has also identified a particularly acute pattern of underpayment and denial across multiple Molina Healthcare entities operating in multiple jurisdictions. Hersperger Decl., ¶13. The Debtor submitted thousands of claims to Molina-affiliated entities across multiple states, and the Debtor's analysis reflects consistently low reimbursement rates that are not adequately explained by applicable fee schedules or coverage determinations. Id. In several instances, Molina entities reimbursed only a small fraction of billed amounts in certain jurisdictions less than fifteen percent (15%) and, in some instances, less than five percent (5%) of billed charges. Id.

Despite repeated efforts by the Debtor and its professionals to engage Molina Healthcare in reconciliation discussions, Molina has declined to participate in any meaningful meet-and-confer process, instead imposing preconditions that have functioned as a barrier to resolution. Hersperger Decl., ¶14. This bad-faith refusal to engage has directly contributed to the need for formal discovery and the requested extension of the § 546(a) deadline. Id.

### D.  Pending and Active Discovery

CMC's investigation is active and ongoing. Hersperger Decl., ¶15. Additional time is required due to: (i) the volume of claims at issue, spanning hundreds of payers and hundreds of thousands of individual claims; (ii) the complexity of the reimbursement frameworks, payer contracts, and applicable fee schedules for each counterparty; (iii) the absence of claims processing documentation and adjudication data that only formal discovery can compel; and (iv) the refusal of Molina and other counterparties to engage in good-faith

reconciliation. Id. In many instances, counterparties have not produced sufficient information to permit complete reconciliation. Hersperger Decl., ¶16. CMC has been unable to obtain claims processing records, adjudication system documentation, or reimbursement algorithm data from multiple payers despite informal requests. Id. Formal discovery under Federal Rule of Bankruptcy Procedure 2004 is necessary to compel production of this information. Id.

CMC is actively preparing Rule 2004 examination requests directed to specific payers and counterparties, including entities that have filed proofs of claim in this case and entities whose adjudication practices reflect the patterns described above. Hersperger Decl., ¶17. Issuing subpoenas, litigating any objections, receiving productions, and completing the necessary analysis cannot be accomplished before the current Deadline of March 29, 2026. Id.

## II.  LEGAL ARGUMENT

Under 11 U.S.C. § 546(a)(1), a debtor-in-possession must commence avoidance actions arising under 11 U.S.C. §§ 544, 545, 547, 548 and 553 within two years after the entry of the order for relief. The Ninth Circuit has held that 11 U.S.C. § 546(a) is not a jurisdictional bar, but a statute of limitations, which may be extended. *In re Petty*, 93 B.R. 208 (B.A.P. 9th Cir. 1988). "Every court that has considered the issue has held that equitable tolling applies to § 546(a)(1)." *Ernst & Young v. Matsumoto (In re United Ins. Mgmt.)*, 14 F.3d 1380, 1384 (9th Cir. 1994).

Moreover, a "court should not look at the trustee's post-discovery diligence when considering whether equitable tolling should be applied." *Templeton v. Milby (In re Milby)*, 545 B.R. 613, 622 (B.A.P. 9th Cir. 2016). The limitations period may also be extended by court order or stipulation. *Official Creditors' Comm. for Qmect, Inc. v. Electrochem Funds, LLC (In re Qmect, Inc.)*, 349 B.R. 620, 624-25 (Bankr. N.D. Cal. 2006) (§ 546's legislative history indicates that the time limits of § 546(a) "are not intended to be jurisdictional and can be extended by stipulation between the necessary parties to the action or proceeding"). When an extension of time is sought before the §546(a) period expires, the request is governed by the "for cause" analysis under Rule 9006(b). *See, e.g., In re Fundamental Long Term Care, Inc.*, 501 B.R. 784, 788 (Bankr. M.D. Fla. 2013); *accord In re The Litigation Practice Group P.C.*, Case No. 8:23-bk-10571-SC, ECF No. 2382 (Bankr. C.D. Cal. Apr. 9, 2025) (Order Granting Trustee's Motion for Order Extending the Estate's Time to File Actions Governed by 11 U.S.C. §§ 108, 546(a), and 549(d), extending the Chapter 11 trustee's § 546(a) deadline for "good cause appearing").

Here, there is ample cause to extend the Deadline. The Debtor's investigation is active and ongoing and cannot be completed before March 29, 2026. Hersperger Decl., ¶15. The investigation encompasses hundreds of payers, hundreds of thousands of individual transactions, and complex reimbursement frameworks that vary by counterparty and require individualized analysis. That analysis cannot be rushed without risking errors or permanently forfeiting viable estate claims.

Furthermore, key information, including claims processing records and adjudication algorithm data is in the hands of third parties and can only be obtained through formal Rule 2004 discovery that cannot be completed before the current Deadline.

Finally, certain counterparties, including Molina Healthcare, have declined to engage in good-faith reconciliation efforts, imposing preconditions that have functioned as barriers to resolution and further slowed the process.

In summary, the Debtor has made diligent, good-faith progress in its investigation, but the volume and complexity of the issues and the necessity of third-party discovery make the current Deadline impractical. Extending the Deadline will allow the Debtor to complete its investigation and, if appropriate, bring well-supported claims on behalf of the estate.

**III. CONCLUSION**

For the foregoing reasons, the Reorganized Debtor respectfully requests that this Court enter an Order:

1. Granting this Motion;
2. Extending the deadline to commence avoidance actions under 11 U.S.C. §§ 544, 545,547, 548, and 553 from March 29, 2026, through and including September 25, 2026; and
3. Granting such other and further relief as the Court deems just and appropriate.

Requests for a copy of the Motion should be in writing and directed to attorney Myles P. McAliney at the address indicated below.

**PLEASE TAKE FURTHER NOTICE** that if you wish to contest the Motion, Local Bankruptcy Rule 9013-1(o) requires that any opposition shall be filed with the Clerk of the United States Bankruptcy Court, 411 West Fourth Street, Santa Ana, California, 92701, and served on the Office of the United States Trustee, 411 West 4th Street, Ste. 7160, Santa Ana, California 92701, and Myles P. McAliney 100 West High Street Ebensburg PA 15931, no later than fourteen (14) days before the hearing date.  Any responses not timely filed and served shall be deemed waived.

Dated: March 27, 2026

Respectfully submitted,

**CROWN MEDICAL COLLECTIONS**

By: /s/ Myles P. McAliney
Myles P. McAliney, Esq.
Special Counsel to Debtor Bridge Diagnostics, LLC
(Admitted Pro Hac Vice)